Case number 24-1369, Boutique Air Inc. petitioner v. United States Department of Transportation and Sean P. Duffy in his official capacity as Secretary of Transportation. Mr. Goldberg for the petitioner, Mr. Fuller for the respondents. Good morning, counsel. Mr. Goldberg, please proceed when you're ready. Thank you. I may please the court. Roy Goldberg on behalf of the petitioner Boutique Air Inc. This case involves a long-standing important program, the Essential Air Service Program, administered by the respondent DOT. And that program provides critical transportation links between the smaller communities and the larger airports in the United States and ultimately throughout the world. And this case involves the department's decision a year ago to award the Essential Air Service subsidy payments for Jackson, Tennessee to Denver Air Connection rather than Boutique Air. And the department made this decision despite the undisputed fact that Denver Air plans to charge the federal government taxpayers millions of dollars more for the four-year period that is covered by the award in comparison to Boutique Air and also to offer only two-thirds as many flights, 12 a week, as opposed to 18 for Boutique Air. So this difference in cost is anywhere from 8.4 million to 21 and a half million dollars. That's a considerable amount. There was a statutory amendment a couple months that came into effect in 2024, a couple months before the decision, that expressly required the DOT to consider the total compensation that it was proposed by the air carrier. And unfortunately, in this case, the department, maybe because it was a new requirement for some reason, they failed to, in our argument, they failed to address that statutory factor. They certainly failed to provide any explanation for why Denver Air Connection should win, given that, again, it was so much more expensive and didn't even have the same operations. So we're not faced here with a typical decision where there's a record and that the department weighed and evaluated the evidence before it and made, you know, a discretionary decision. Rather, in this case, the department just failed to show its work. It basically took a position of, well, just trust us. We're the government. We've made a decision. They gave reasons. They didn't give reasons as to why the costs of Batik Air, the much lower cost proposal, should win out. A good example would be some of the other cases where they actually look at the various costs, look at the subsidies being proposed, and actually then go into the record as to why they've decided that decision. In this case, they gave no reason as to why the much more expensive cost proposal from Denver Air Connection would win out. Just in able, in order to enable us to better evaluate the subsidy component of your claim, can you explain how the per passenger subsidies work? Because part of the department's reasoning gave me the impression they thought that they would become less over time. Um, I'm only familiar, Your Honor, Judge Pillar with what's in the record, which is that the subsidies proposed by Denver would increase during the four years, which is understandable, as did the Batik subsidies. It's just that if you look at, and I believe it's in the reconsideration decision, there's a table that compares, and it just shows there's a very large difference between the two, and that in our case, Batik Air was much cheaper, and we think in part it's arbitrary and capricious because it's in the record. In Rutland and in Quincy, the department said, well, Batik Air, the community wants you, but we're not going to select you because you happen to be a few hundred thousand dollars more. Here we're talking as much as 21 million dollars more, and yet they flipped the script, and they said we're not going to go with you, and did not really, they never gave, there's nothing in the record that says we've actually done the homework, and let me show you your work. The US Air example is interesting. It's cited by the government. It dealt with an award of international route to Manchester, England. So just in terms of like the brass tacks, like how the subsidies work, they subsidize a percent, they subsidize a proportion. When the air carrier is drawing a lot of business, it seems like it doesn't need the subsidy anymore. Does it have a way? Just remind us how this works. What are they paying for? How is it per passenger? Is it permanent? Sure. Well, this case is for four years. Actually, I believe it's four years with a two-year option or vice versa. It could be six years, and there is in the record a reference to, at first, I think it was Denver Air Connection. One of the carriers said we don't need a waiver. We don't need a subsidy. We can go ahead. We'll make money. Choose us, but then that was taken away. So all the carriers required a subsidy. The passengers do pay something. It's just not enough. You know, this comes back to actually 1978 and airline deregulation. Once that happened, all kinds of small communities, they just no longer, the market wasn't there. So the market needs to be assisted, and so if I'm going from Jackson, Tennessee, I'm going to pay something. It's probably gonna be like $59 or something like that to go to St. Louis or go to Atlanta, where then I will change planes, but if I'm a carrier, I don't serve that market at all because I can't make any money unless the government comes in, and so in this particular case, we just believe that this was a situation where the government maybe could have put something on the record. Can I just, so AIA-26. Sure. Boutique Air asserts the department should have selected it because it submitted a valid proposal to serve Jackson at significantly lower subsidy. While department is required to consider the total compensation, statute does not require the department to select the least expensive air service proposal, and then the agency goes on to say, as discussed above, multiple other statutory factors favor DAC's proposal over Boutique Air's proposal. So there's an acknowledgment that there's a cost differential. There's an explanation that there are other factors that outweigh the cost differential. But it's so conclusory, Chief Judge Radovastan. I mean, it's basically just saying, trust us. Here's the statute. We followed the statute. Now let's move on. I don't think it's just saying that because it's saying there's other statutory factors that outweigh it, and then there's an explanation above about why those other statutory factors tip against your client and in favor of better. But what they don't do is go into the actual competing cost proposals and give any indication as to why the much more significant higher cost of Denver Air Connection would be a factor to consider. I know the government is objected to us putting in the supplemental 28 J. But with Parkersburg, but that's a great example. If you look at that recent decision, it has a cost analysis in a comparison of what was, uh, requested. I think I mean, it's certainly true that if it all if everything comes down to cost or if a lot of it comes down to cost, then an assessment of the costs and a more detailed analysis may well be something that the agency thinks is necessary for it itself to make a decision. But I don't think that there's a rule that says just because costs are different, there has to be the same level of detail of cost comparison when there are other considerations that factor in and outweigh the cost. But your honor, it was just so, um, summary the way they did it. The first decision on August 8th, they basically said, well, the community likes, um, Denver Air Connection better. They didn't go in a more detail, didn't give us the opportunity. Then on their reconsideration, they gave a little bit more detail and they said, well, during the pandemic, you know, you had service issues and then in the record, they put it in an article from November 2021. But I mean, this wasn't a debarment situation. They shouldn't be treating it as a debarment situation. Certainly Batik is fully qualified. And, you know, the example another that I would give your honor is the PNV Perry by Energy versus FERC case from this court in 2014, where the court said that FERC failed to explain how or why in what sense the continued energy demand of historic customers, um, did not also cost the same. They were getting a price break that the new customers weren't getting. And the court said that the commission failed to offer a reasoned basis for his conclusion. Uh, and that was a Judge Williams decision. And I think the same is true here. The D. O. T. Has said, Oh, trust us. We've considered cost. We've considered the other factors, and here's how we come out. But they haven't shown its work. I also thought it was relevant on a 27 where, um, this is the reconsideration letter further on where, uh, already talks about the sort of the interplay between the higher cost of Denver's proposal and the level of confidence it has that that Jackson will continue to be eligible. Uh, it talks about the requirement of average of 10 employments a day. And basically, I take them to be saying that, you  that access to reliable air service is gonna make, uh, promises Jackson, uh, better outcome in rebuilding its air transportation access. So really sort of taking the two factors together, the community's confidence, therefore, the likelihood that that there will actually be usage of the subsidized but it's really for it. And that if what ultimately the department is trying to do is to beef up and put on its own to feed or two wings, the air service that it has more confidence that that spending a little more up front is gonna is gonna accomplish that. And I let me say why I think that's unfair. But if I am, it's a little hard to think that we're gonna second guess it. It's well, it's a little unfair. I think, first of all, they recognize the boutique air put in. It was 99% on time for controllable. You know, they have an issue. What is controllable mean? Well, I think everybody knows controllable means not a weather delay, traffic service, etcetera. So that was in the record. It totally ignored. Uh, the evidence of the community that was in 2021 when we were in the middle of a pandemic. And yes, we're honest that they had performance issues during the pandemic four years ago. Now, I think in the reconsideration decision, your honor, they say, well, that was recent. Well, no, an aviation 2021 during the height of the pandemic was not recent for a time period. This 2024 to 2028. Uh, the final thing is, and your honor mentioned the fact that the subsidy level, I mean, the $650 subsidy level is clearly gonna be blown out by this more than $1000 a passenger subsidy level. And all that the D. O. T. Says is, well, we don't, you know, we don't prejudge what may happen in the future, but we think that's another. So three primary grounds for arbitrary and capricious. First of all, they may have a conclusion that they've met the factors, but they don't show their work. Second of all, it's very inconsistent with what happened in the two, uh, uh, in Rutland and Quincy, where they said Batik air community wants you, but you cost a few $100,000 more a year. So we're not gonna go with you. And then finally, the fact that they completely ignored the fact that Jackson will be ineligible to be in the A. S. Community going forward if this subsidy goes through. So we think that on the basis of this record, uh, that it's arbitrary conditions. Thank you, Your Honors. Thank you, Council. Thank you. Mr Pollard. May it please the court? Sam Fuller for respondents. Your Honor, I'd like to start with a few points that petitioners raised in their argument. First, the reliability issues when the department considered the cost in its reconsideration order and its selection order, it considered what it was getting for that cost. The record explicitly states that the government is considering the cost factor in the context of boutiques. Reliability issues. Boutique raises various quibbles with those reliability issues, but they're well supported in the record. First boutiques, as the community described, struggled to complete flights in 2021. But also boutique failed to follow the statutory provisions for leaving the community in December 2021. That left the community without any confidence in boutique service, as was explained in the record. In short, the department's analysis of the cost factor was not only how much the money was, but also what the what the government was getting for its money. In as the reconsideration order explains, a provider that was not supported by the community that had past issues with reliability was simply not a bargain. The government also adequately considered the cost factor here. In both orders, there is an analysis of the cost. First, it does what petitioner asked it to. It did what petitioner asked it to do in the selection order. It laid out a table of what each proposal cost, compared all of those top line dollar levels, and then it expanded upon its analysis in the reconsideration order. The reconsideration order explains that cost is considered in the context of the other factors. That's the specific response to boutique's argument that Jackson's eligibility for this service is going to be jeopardized by the large subsidy, and it's not going to be able Denver is not gonna be able to keep her passenger subsidy below the requisite $650. Yes, a few points on that. First, as we noted in the briefing, the subsidy cap is actually not in effect right now through the end of September, and the department's policy is not to judge a community's compliance with the subsidy cap ahead of time. That's a that's a judgment that's made on a backwards looking basis. But most importantly is, as the as the reconsideration order mentions on, I believe the final or next to last page, the subsidy is a per passenger subsidy, so it's a fraction. And what the department determined here, which was a reasonable determination to make, is that better quality service that cost more money would increase ridership. So yes, the top of the fraction was increasing. There are more dollars, but the hope is that a provider that's supported by a community and that has increased reliability over the prior provider would be able to grow that bottom of the fraction, right? So when you say it's per passenger, I think I find that a little bit confusing because it's not actually per passenger. It is an amount of money that's given, and then when it's looked at, it's sort of reviewed as whether it's meeting the requirements of the program, it's divided by the number of passengers. So if you have an airline that has a lot more uptake, there's a lot more passengers, then the per passenger cost to the money, but it's a better deal for the government because it's increasing passengers, right? Is that right? Exactly, Your Honor, and that's how the government makes the eligibility determination that Boutique is concerned about. So yes, the overall subsidy considered as a statutory factor is just the cost of the proposal, as the statutory language mentions. But the EAS eligibility point that Boutique raised, that's the fraction, that's the per passenger subsidy, and that's capped at $650 for a community such as Jackson. And so am I right that a crucial part of the reasoning and support of the larger subsidy to Denver Air is this sentence in the reconsideration order at J27, where the department finds that as Jackson works to rebuild its air transportation, access to reliable air service may be its best medicine, especially with respect to rebuilding trust in air transportation in the community and increasing employment. Without a specific prediction about how many passengers are going to go, the department is really depending on the idea that people are going to like the service Denver offers, and many more people are going to fly. And so Jackson's going to continue to be eligible, and the higher cost that the government's paying is going to be worth something in terms of benefit to the community. That's correct, Your Honor, and that also matches the government's more broad analysis of the cost factor, where the government considers what it gets for its money. In the reconsideration order, it also mentions that it considered the subsidy in the context of performance, reliability, the community's preferences, and it determined that something that the community supported, that had a track record of reliability, that hadn't attempted to leave the community before the holidays, contrary to how the statute requires, was worth the higher cost. Why isn't Boutique's pointing to the unusual circumstances of the pandemic sufficient to assuage the concerns about their reliability? So, Your Honor, the community was unequivocal in stating that it doesn't view Boutique as a viable option. So first, that goes to community preference, which is a separate factor, that the community simply was not willing to consider Boutique after what had happened. But also, Boutique's reliability issues continued well after the acute phase of the pandemic. It attempted to abandon the market in December 2021. That wasn't April 2020. Moreover, the community comments mentioned that Denver Air Connection has a strong record of reliability at other EAS communities, which the department also took into consideration. And the final point is the department couldn't verify Boutique's claims of controllable cancellation. That's an invented metric that the department doesn't keep in its statistics. The department tried to verify Boutique's claims, and as it mentions in the reconsideration order, that controllable cancellation statistic wasn't something that could be confirmed anywhere. The department doesn't know what controllable encompasses or doesn't encompass, and it didn't have any other evidence of Boutique's reliability before it. Colleagues don't have additional questions. Thank you, Council. Thank you, Your Honor. Goldberg will give you a minute for rebuttal. Thank you, Your Honor. May it please the court again? Roy Goldberg. Um, on this last point, I think that's council testifying as to the state of pandemic in 2021. But December was, I believe it was called Omnicron. Maybe it was Delta. I mean, things had changed quite a bit, and it was still a serious situation for the industry. So it's frankly arbitrary and capricious for the department at this time to say, Well, we've decided that the community had this overwhelming vote in the matter. And because there it was basically an effective debarment, like in government contracts, where they're saying, Well, we're not gonna allow you Boutique. But that wasn't the due process. It wasn't. It wasn't even in the original order and barely in the reconsideration order. Um, so I don't I don't think the government has put on the record a rational basis for how it treated boutique here. And there's no real discussion as to how the numbers really work out and why it's so important to have much more expensive, um, Denver air connection. And finally, there really is no explanation in the record as to why in Rutland and in Quincy, being a few $100,000 over, even though the community wanted boutique was sufficient to deny boutique air in those markets 2017 2019. And then we come to today where it's completely reverse. They give lip service to the requirement of the statute, but they don't explain. They don't show their work. So we think it's arbitrary and capricious. It's not the right way to do this program. I know the D. O. T. Can do it right. They did it right in Parkersburg, frankly, and that's why we asked for relief from this court. Thank you very much. And you you are not challenging the community preference analysis. You're challenging really principally this extraordinary cost difference. Um, there's five statutory factors, but when you're right, they could consider community, of course, but you're not challenging the way they consider community. Well, a little bit, Your Honor, because in the order, they don't say anything about past performance. They say they quote the mayor in a letter saying something without using any emphasis on that at all. And then in the reconsideration, they do bring it out a little bit more. Certainly, um, talking about 2021, they never tie it up till now. They never talk other than saying that we don't believe you're 99% figure fatigue. So I would think they don't say they don't believe. They say we can't substantiate it. Exactly. I'm sorry. That's what I mean. They can't substantiate it. Exactly. But when they say that the recent history shows performance issue, I think in this world, 2024 to 2028 is not relevant to December 2021. Thank you very much. Thank you, Counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Pillard; Randolph